1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

**DAMIEN WAFFORD,**

                                        Petitioner,

         **v.**

**DAVE DAVEY, Warden,**

                                        Respondent.

**Case No. 1:12-cv-0122 LJO MJS (HC)**

**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS**

**(Docs. 36, 51)**

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is represented by attorneys Paul McCarthy and Manisha Daryani. Respondent, warden of California State Prison, Corcoran, is substituted as the proper named respondent under Rule 25(d) of the Federal Rules of Civil Procedure. Respondent is represented by Rebecca Whitfield of the office of the California Attorney General. The parties declined magistrate judge jurisdiction under 28 U.S.C. § 636(c). (ECF No. 34.)

**I.      PROCEDURAL BACKGROUND**

Petitioner is in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern. On October 16, 2008, a

1

1  jury convicted Petitioner of kidnapping for ransom, making a criminal threat, participating

2  in a criminal street gang, assault committed on behalf of a criminal street gang, and

3  various sentence enhancements, including allegations that the crimes were committed

4  for the benefit of a criminal street gang, carrying a loaded firearm, unlawful firearm

5  activity, resisting an executive officer, resisting a peace officer. (Clerk's Tr. at 612-15.)

6  On February 19, 2009, Petitioner was sentenced to an indeterminate term of life without

7  the possibility of parole. (Id.)

8        Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

9  District on October 3, 2009. (Lodged Doc. 16.) On June 30, 2010, the appellate court

10  affirmed the conviction. (Answer, Ex. A.) The California Supreme Court summarily

11  denied Petitioner's petition for review on October 13, 2010. (Lodged Docs. 19-20.)

12        Petitioner next sought collateral review of the petition by way of a petition for writ

13  of habeas corpus filed with the Kern County Superior Court on December 16, 2011.

14  (Lodged Doc. 21.) The petition was denied on January 30, 2012. (Lodged Doc. 22.)

15        Petitioner filed a petition for writ of habeas corpus with the Fifth District Court of

16  Appeal on January 24, 2013. (Lodged Doc. 23.) The petition was denied on June 18,

17  2013. (Lodged Doc. 24.)

18        Petitioner filed a petition for writ of habeas corpus with the California Supreme

19  Court on September 26, 2014. (Lodged Doc. 25.) The California Supreme Court

20  summarily denied the petition on December 10, 2014. (Lodged Doc. 27.)

21        Petitioner filed his federal habeas petition on January 10, 2012. (Pet., ECF No. 1.)

22  The petition raised four grounds for relief. (Id.) On December 10, 2013, the Court found

23  that Petitioner was not diligent in exhausting his third and fourth claims, and ordered

24  Petitioner to file an amended Petition with only claims one and two of the petition.

25  Petitioner filed an amended petition on March 24, 2014, containing the first two claims.

26  (ECF No. 29.)

27        On May 21, 2014, Respondent filed an answer to the amended petition. (ECF No.

28  36.) On December 30, 2014, Petitioner filed a traverse. (ECF No. 53.)

1    However, on December 16, 2014, Petitioner filed a motion to amend to re-assert

2    the claim presented in the original petition regarding ineffective assistance of counsel.

3    (ECF No. 51.) On January 8, 2015, Respondent filed an opposition to the motion to

4    amend. (ECF No. 54.) Petitioner filed an reply on February 24, 2015. (ECF No. 58.)

5    In order to determine the operative claims of the petition, the Court will address

6    the motion to amend prior to addressing the merits of the claims raised in the petition.

7    **II.**    **MOTION TO AMEND**

8    On December 16, 2014, Petitioner moved to amend the petition to reassert his

9    previously unexhausted claim of ineffective assistance of counsel. (Mot. to Amend, ECF

10   No. 51.) Petitioner asserts that he presented the claim to the California Supreme Court

11   on September 26, 2014, and that court denied the claim on December 10, 2014. (ECF

12   No. 51-3.) As the claim is exhausted, Petitioner moves to amend the petition to present

13   the claim in the instant federal proceeding.

14   Respondent filed an opposition to the motion to amend on January 8, 2015.

15   (Opp'n, ECF No. 54.) Respondent believes that the Petitioner should not be entitled to

16   file a second amended petition including the ineffective assistance of counsel claim as

17   the claim is barred by the statute of limitations. The Court must therefore determine

18   whether the claim is timely filed, and if it is not, whether it is entitled to an earlier filing

19   date based on relation back to the original filing date of the federal petition.

20   **A.**    **Commencement of Limitations Period Under 28 U.S.C. § 2244(d)(1)(A)**

21   On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

22   Penalty Act of 1996 (hereinafter "AEDPA"). AEDPA imposes various requirements on all

23   petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy,

24   521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).

25   In this case, the petition was filed in 2012, after the enactment of AEDPA, and is

26   subject to its provisions. AEDPA imposes a one-year period of limitation on petitioners

27   seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As

28

3

amended, § 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Under § 2244(d)(1)(A), the limitations period begins running on the date that the Petitioner's direct review became final or the date of the expiration of the time for seeking such review. In this case, the California Supreme Court denied review on October 13, 2010. The state appeal process became final ninety days later, on January 11, 2011, when the time for seeking certiorari with the United States Supreme Court expired. U.S. Supreme Court rule 13; Bowen v. Roe, 188 F.3d 1157 (9th Cir. 1999). The AEDPA statute of limitations began to run the following day, on January 12, 2011. Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).

Petitioner had one year from January 12, 2011, absent applicable tolling, in which to file his federal petition for writ of habeas corpus. Petitioner filed the instant petition on January 10, 2012, within the statute of limitations period. However, Respondent asserts that Petitioner sought to amend the petition on December 16, 2014 to assert the claim at

1    issue, a claim that does not relate back to the original petition.

2          Under 28 U.S.C. § 2244(d)(2), the "time during which a properly filed application

3    for State post-conviction or other collateral review with respect to the pertinent judgment

4    or claim is pending shall not be counted toward" the one year limitation period.  28

5    U.S.C. § 2244(d)(2). In Carey v. Saffold, the Supreme Court held the statute of

6    limitations is tolled where a petitioner is properly pursuing post-conviction relief, and the

7    period is tolled during the intervals between one state court's disposition of a habeas

8    petition and the filing of a habeas petition at the next level of the state court system. 536

9    U.S. 214, 216 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

10   Nevertheless, state petitions will only toll the one-year statute of limitations under §

11   2244(d)(2) if the state court explicitly states that the post-conviction petition was timely or

12   was filed within a reasonable time under state law. Pace v. DiGuglielmo, 544 U.S. 408

13   (2005); Evans v. Chavis, 546 U.S. 189 (2006). Claims denied as untimely or determined

14   by the federal courts to have been untimely in state court will not satisfy the

15   requirements for statutory tolling. Id.

16         Here, the statute of limitations period began to run on January 12, 2011.

17   Petitioner filed a state habeas petition on December 16, 2011, in the Kern County

18   Superior Court. As of December 16, 2011, 339 days of the limitations period had

19   elapsed. Respondent does not challenge Petitioner's right to tolling during the pendency

20   of the petition. Accordingly, Petitioner is entitled to tolling from December 16, 2011, until

21   the date the petition was denied on January 30, 2012. As 339 days of the limitations

22   period already elapsed, 26 days remained as of January 30, 2012.

23         The limitations period expired 26 days later on February 25, 2012. Petitioner next

24   filed an appeal with the Fifth District Court of Appeal on January 24, 2013, nearly 11

25   months later. State petitions filed after the expiration of the statute of limitations period

26   shall have no tolling effect. Ferguson v. Palmateer, 321 F.3d 820 (9th Cir. 2003)

27   ("section 2244(d) does not permit the reinitiation of the limitations period that has ended

28

5

1   before the state petition was filed."). The request to amend the petition was made on

2   December 16, 2014, over two years after the expiration of the year statute of limitations

3   period.

4           Accordingly, absent relation back, the later commencement of the statute of

5   limitations or any applicable tolling, the claim Petitioner desires to present in an

6   amended petition is barred by the statute of limitations. Petitioner has made no showing

7   that the statute of limitations should commence at a later date under § 2244(d)(1)(B)-(D).

8   Petitioner may only rely on the relation back theory to attempt to show that this claim is

9   not barred by the statute of limitations.

10          **B.      Relation Back Under Federal Rule of Civil Procedure 15(c)**

11          "Congress enacted AEDPA to advance the finality of criminal convictions by

12   imposing 'a tight time line' in the form of a one-year time limit on state prisoners seeking

13   to challenge their convictions in federal court." Hebner v. McGrath, 543 F.3d 1133, 1137

14   (9th Cir. 2008) (citing Mayle v. Felix, 545 U.S. 644 at 662, 125 S. Ct. 2562, 162 L. Ed. 2d

15   582 (2005)). Habeas petitions may be amended "as provided in the rules of procedure

16   applicable to civil actions." 28 U.S.C. § 2242. The Federal Rules of Civil Procedure allow

17   for amendments made after the statute of limitations has run to "relate back" to the date

18   of the original pleading when the amended pleading arises "out of the conduct,

19   transaction, or occurrence set out—or attempted to be set out—in the original pleading."

20   Fed. R. Civ. P. 15(c)(1).

21          In Mayle, the United States Supreme Court narrowly interpreted the meaning of

22   "conduct, transaction, or occurrence" that allows for an amended claim to relate back.

23   Hebner, 543 F.3d at 1138 ("[The Ninth Circuit] previously interpreted broadly 'conduct,

24   transaction, or occurrence' to allow the relation back of an amended claim as long as it

25   stems from the same trial, conviction, or sentence as the original. In Mayle, the Supreme

26   Court rejected our construction as 'boundless,' because '[u]nder that comprehensive

27   definition, virtually any new claim introduced in an amended petition will relate back, for

28

6

1    federal habeas claims, by their very nature, challenge the constitutionality of a conviction

2    or sentence.'" Mayle, 545 U.S. at 656-57, 661.) Ultimately, an amended habeas petition

3    "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts

4    a new ground for relief supported by facts that differ in both time and type from those the

5    original pleading set forth." Mayle, 545 U.S. at 650; see also United States v. Ciampi,

6    419 F.3d 20, 24 (1st Cir. 2005) (restating the Mayle standard despite the fact that pro se

7    habeas petitions are normally liberally construed.). The "time and type" language in

8    Mayle refers not to the claims, or grounds for relief, but rather "*the facts that support*

9    *those grounds.*" Nguyen v. Curry, 736 F.3d 1287, 1297 (9th Cir. 2013) (emphasis in

10    original).

11       By way of the pending motion to amend, Petitioner seeks to present a claim of

12    ineffective assistance of counsel based on a conflict of interest. (Pet. at 7, ECF No. 1.)

13    Petitioner asserts that there was a collusive relationship between counsel and the

14    prosecution, but due to the "clandestine nature" of the relationship, no further details are

15    known. (ECF No. 51-2 at 3.) The claim was originally presented as claim four of the

16    federal petition, but later dismissed. (Pet. at 7.)

17       The instant petition is proceeding on two claims: (1) insufficient evidence to

18    support the conviction for kidnapping and the street gang enhancement; and (2)

19    prosecutorial misconduct based on the fact that the prosecutor vouched for the credibility

20    of a prosecution witness during closing statements. (Am. Pet., ECF No. 29.)

21       Based on the narrowly prescribed definition of "conduct, transaction, or

22    occurrence" under Mayle, Petitioner's claim does not relate back. Nguyen, 736 F.3d at

23    1297.  The ineffective assistance of counsel claim is supported by facts that differ in both

24    time and type from those of the pending claims. Mayle, 545 U.S. at 650. The claim is

25    different in type than the pending claims. The pending claims do not allege claims based

26    on the conduct of counsel. Instead, they focus on the evidence presented by the

27    prosecution, and whether it was sufficient to support the conviction, or alternatively, if

28

1    there was improper bolstering of a witness' testimony by the prosecution. Petitioner did

2    not assert any other claims or present facts suggesting that his counsel was ineffective.

3    Petitioner's claims currently pending in his federal petition regarding other aspects of the

4    trial are not sufficient to allow for relation back where the new claim focuses on factual

5    underpinnings that were not specifically described in the original petition.

6         Petitioner admits in his motion to amend that the new claim "does not obviously

7    relate back" to the other claims. (ECF No. 51-2.) However, he asserts that a claim of

8    ineffective assistance of counsel is pervasive and affects all other claims. (Id.) Petitioner

9    has not presented any legal support for the proposition that the relation back doctrine

10   should be applied differently for claims of ineffective assistance of counsel. Other courts

11   in this district have not treated such claims differently, and this Court sees no reason

12   why the standard under Mayle should be modified. See, e.g., Winn v. Foulk, 2015 U.S.

13   Dist. LEXIS 19977 (E.D. Cal. Feb. 17, 2015) (finding that claims of ineffective assistance

14   of counsel will not relate back to a claim that the trial court erred in imposing a

15   consecutive sentence).

16        Petitioner's claim of ineffective assistance of counsel does not relate back to the

17   same transaction or occurrence set forth in the claims of the present petition. Petitioner

18   has not presented any other basis for tolling the limitations period with regard to the

19   claim. Accordingly, the claim is barred by the statute of limitations. As the claim is

20   barred, the Court DENIES Petitioner's motion to amend the Petition, and shall only

21   address the two pending claims presented in the amended petition filed on March 21,

22   2014.

23   **III.**    **STATEMENT OF THE FACTS**[1]

24        The victim, Sidney Maiden, met defendant while they were both
     incarcerated in the county jail. According to Maiden, defendant was a well-
25   known member of the Bloods criminal street gang in jail and occupied the
     status of a "shot caller" within the gang. After Maiden was released from
26

27   _____
     [1] The Fifth District Court of Appeal's summary of the facts in its June 30, 2010 opinion is presumed correct.
     28 U.S.C. § 2254(e)(1).

28

8

jail, he was "jumped in" to the gang. He was 18 years old at the time.

Shortly after he joined the Bloods, Maiden borrowed a .45-caliber gun belonging to defendant, which Maiden subsequently lost. Within a week or two of borrowing the gun, Bloods member Adam Jones came to Maiden's apartment and said defendant wanted to see him.

After Maiden left his apartment with Jones, defendant drove up and told Maiden to get in the car. Maiden did not want to get in the car but did so anyway, explaining: "I had no other choice … because of who he is." Maiden explained it was not a good idea to disobey a shot caller because "[y]ou either … going to have to fight someone, you could get shot, or you can get DP-ed, disciplined."

After Maiden got in defendant's car, defendant started driving towards a carwash located in Bloods territory. During the drive, defendant asked for his gun back. When Maiden told him he did not have the gun anymore, defendant said he wanted Maiden either to give him $200, or another gun plus $100.

When they reached the carwash, four other Bloods were waiting and defendant told them to follow him. Defendant took Maiden to an alley behind the carwash and told Jones to fight Maiden. Maiden testified that after they fought, defendant "walked in front of me like he was going to walk past me, and he turned around and socked me in my mouth, in my chin, busted my chin. And I hit my head on the back of the car, and I hit the ground. And I hit the ground, and I blacked out."

When Maiden came to his senses, he got ready to stand up, but defendant told him to stay down. Defendant then told Maiden to walk over to the 7-Eleven and that they would meet him there. After defendant left, Maiden did not walk to the 7-Eleven as instructed but went to the carwash and asked to use the telephone. Maiden called Lameka Deloney, his child's mother, and asked her to pick him up at the carwash. Maiden waited for 15 to 20 minutes in the carwash office before Deloney arrived.

As Deloney and Maiden were getting ready to pull out of the carwash parking lot, Maiden saw defendant drive by. Defendant slowed down and looked at them, before driving off. Deloney entered the freeway. When Maiden looked in the rearview mirror, he saw defendant and Jones chasing them.

Fearing the chase would result in an accident, Maiden told Deloney to "stop driving crazy and get off the freeway." After they got off the freeway, Deloney pulled over to a curb and defendant pulled up next to them. Defendant "rolled down the window and said he has heat for anyone who wants it." Maiden explained that this meant defendant had a gun and was ready to use it against anyone who had a problem with him.

Maiden told Deloney to drive him to his aunt's house, so he could see if she could get some money for him. Deloney dropped Maiden off at his aunt's house and then left. When Maiden knocked on the door, no one answered. After he realized no one was home, Maiden saw defendant and Jones had pulled up to his aunt's house. Defendant told Maiden to get in the car. Maiden did not want to get in the car and was more afraid to get in the car than he was the first time. Maiden explained he was still bleeding

from being beaten up and kept "[d]azing in and out."

Although he feared for his life, Maiden got in defendant's car. While they were driving, Maiden kept "blacking in and out." At one point, he noticed they were driving past his grandmother's house. Defendant looked at him and said, "I know your grandma stay right there." Defendant then drove to Jones's house.

Defendant took Maiden to Jones's house. There, defendant told Maiden to try to call somebody to get money or a gun. Maiden felt that he could not leave the house and that, if he tried to leave, his grandparents would be in danger from defendant. During the ride over to Jones's house, Maiden had seen a semiautomatic revolver between the front seats, close to defendant.

Maiden called Deloney again and told her he needed her to try to get some money for him. Deloney arrived 45 minutes to an hour later. Maiden was standing outside with defendant, Jones, and Maiden's friend, Ced. When Maiden walked up to Deloney's car, she told him she was trying to get money for him and tried to persuade him to get in the car. Maiden responded that he could not get in the car because he owed money and defendant would try to hurt or kill him if he left. Maiden also feared for his grandparents who lived just down the street.

Deloney left and returned about an hour later with Maiden's friend, Kevin Gray. Maiden went outside to talk to them. They kept telling him to get in the car, but Maiden refused, trying to explain that they would hurt him or his grandparents if he did not get money or a gun.

After Maiden went back into the house, he heard helicopters followed by sirens. Defendant asked him if he had called the police and Maiden said no. Defendant then told him to follow him out back. Once outside, defendant told Maiden to get away from him and not to tell anyone what happened.

People v. Wafford, 2010 Cal. App. Unpub. LEXIS 4998, 2-7 (Cal. App., June 30, 2010).

## IV.   DISCUSSION

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court

1  has jurisdiction over the action.

2  **B.**  **Legal Standard of Review**

3  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

4  Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus

5  filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood,

6  114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of

7  the AEDPA; thus, it is governed by its provisions.

8  Under AEDPA, an application for a writ of habeas corpus by a person in custody

9  under a judgment of a state court may be granted only for violations of the Constitution

10  or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.

11  7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in

12  state court proceedings if the state court's adjudication of the claim:

13
14  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

15
16  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

17  28 U.S.C. § 2254(d).

18  1.  Contrary to or an Unreasonable Application of Federal Law

19  A state court decision is "contrary to" federal law if it "applies a rule that

20  contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

21  that are materially indistinguishable from" a Supreme Court case, yet reaches a different

22  result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06.

23  "AEDPA does not require state and federal courts to wait for some nearly identical

24  factual pattern before a legal rule must be applied. . . . The statute recognizes . . . that

25  even a general standard may be applied in an unreasonable manner" Panetti v.

26  Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

27  "clearly established Federal law" requirement "does not demand more than a 'principle'

28

1    or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state

2    decision to be an unreasonable application of clearly established federal law under §

3    2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

4    (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-

5    71 (2003).  A state court decision will involve an "unreasonable application of" federal

6    law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at

7    409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the

8    Court further stresses that "an *unreasonable* application of federal law is different from

9    an *incorrect* application of federal law."  131 S. Ct. 770, 785 (2011), (citing Williams, 529

10   U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

11   merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

12   correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541

13   U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

14   have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S.

15   Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

16   Federal law for a state court to decline to apply a specific legal rule that has not been

17   squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

18   (2009), quoted by Richter, 131 S. Ct. at 786.

19                    2.    Review of State Decisions

20           "Where there has been one reasoned state judgment rejecting a federal claim,

21   later unexplained orders upholding that judgment or rejecting the claim rest on the same

22   grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

23   "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

24   (9th Cir. 2006). Determining whether a state court's decision resulted from an

25   unreasonable legal or factual conclusion, "does not require that there be an opinion from

26   the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

27   "Where a state court's decision is unaccompanied by an explanation, the habeas

28

1    petitioner's burden still must be met by showing there was no reasonable basis for the

2    state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does

3    not require a state court to give reasons before its decision can be deemed to have been

4    'adjudicated on the merits.'").

5          Richter instructs that whether the state court decision is reasoned and explained,

6    or merely a summary denial, the approach to evaluating unreasonableness under §

7    2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

8    or theories supported or, as here, could have supported, the state court's decision; then

9    it must ask whether it is possible fairminded jurists could disagree that those arguments

10   or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786.

11   Thus, "even a strong case for relief does not mean the state court's contrary conclusion

12   was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves

13   authority to issue the writ in cases where there is no possibility fairminded jurists could

14   disagree that the state court's decision conflicts with this Court's precedents." Id.  To put

15   it yet another way:

16
          As a condition for obtaining habeas corpus relief from a federal
17        court, a state prisoner must show that the state court's ruling on the claim
          being presented in federal court was so lacking in justification that there
          was an error well understood and comprehended in existing law beyond
18        any possibility for fairminded disagreement.

19   Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

20   are the principal forum for asserting constitutional challenges to state convictions." Id. at

21   787. It follows from this consideration that § 2254(d) "complements the exhaustion

22   requirement and the doctrine of procedural bar to ensure that state proceedings are the

23   central process, not just a preliminary step for later federal habeas proceedings." Id.

24   (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

25                      3.     Prejudicial Impact of Constitutional Error

26         The prejudicial impact of any constitutional error is assessed by asking whether

27   the error had "a substantial and injurious effect or influence in determining the jury's

28

verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002). Musalin v. Lamarque, 555 F.3d at 834.

## V.   REVIEW OF PETITION

### A.   Claim One: Insufficient Evidence

Petitioner claims that there was insufficient evidence that the victim suffered bodily harm during the commission of the kidnapping, and that there was insufficient evidence to support the criminal street gang enhancement under Cal. Penal Code § 186.22 (b)(1). (Am. Pet., ECF No. 29.)

#### 1.   Gang Enhancement

Petitioner asserts that there is insufficient evidence in that the California Penal Code implies that the enhancement applies when the crime committed is a primary activity of the gang. The gang expert opined that the gang's primary activities included the sale of narcotics, burglaries, robberies, shootings, and murders. However, the expert did not testify that kidnapping was a primary activity of the gang, and therefore there is insufficient evidence to support the enhancement.[1] (Am. Pet. at 9-10.)

---

[1] Respondent asserts that Petitioner's claim is unexhausted in that the claim presented in state court was whether there was insufficient evidence presented by the gang expert as to the primary activities of the gang. It is unclear whether the claim as presented in the state court was so narrowly confined. As a matter of judicial efficiency, the Court shall review the merits of the petition, as authorized under 28 U.S.C. § 2254(b)(2).

1

a.   State Court Decision

2      Petitioner presented this claim by way of direct appeal to the California Court of

3  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

4  appellate court and summarily denied in a subsequent petition for review by the

5  California Supreme Court. Because the California Supreme Court's opinion is summary

6  in nature, this Court "looks through" that decision and presumes it adopted the reasoning

7  of the California Court of Appeal, the last state court to have issued a reasoned opinion.

8  See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas

9  review, "look through" presumption that higher court agrees with lower court's reasoning

10 where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d

11 663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court

12 opinion in determining whether state court's rejection of petitioner's claims was contrary

13 to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

14     In denying Petitioner's claim, the California Court of Appeal explained:

15  I. Sufficiency of the Evidence to Support the "Primary Activities" Element

16
17     Defendant contends there was insufficient evidence to support the
   "primary activities" element of the gang enhancements and substantive
   gang offense. He argues that the gang expert's testimony lacked adequate
18 foundation.

19     Section 186.22, subdivision (f) defines a "'criminal street gang'" as a
   "group of three or more persons" that has as "one of its primary activities
20 the commission of one or more of the criminal acts enumerated" in the
   statute. (§ 186.22, subd. (f).) A criminal street gang must also have "a
   common name or common identifying sign or symbol" and its members
21 must "engage in or have engaged in a pattern of criminal gang activity."
   (Ibid.)
22

23     "The phrase 'primary activities,' as used in the gang statute, implies
   that the commission of one or more of the statutorily enumerated crimes is
24 one of the group's 'chief' or 'principal' occupations. [Citation.]" (People v.
   Sengpadychith (2001) 26 Cal.4th 316, 323 (Sengpadychith).) It is settled
   that the primary activities element may be established through expert
25 testimony. (People v. Vy (2004) 122 Cal.App.4th 1209, 1226; People v.
   Duran (2002) 97 Cal.App.4th 1448, 1465 (Duran); People v. Augborne
26 (2002) 104 Cal.App.4th 362, 372.) "The testimony of a gang expert,
   founded on his or her conversations with gang members, personal
27 investigation of crimes committed by gang members, and information
   obtained from colleagues in his or her own and other law enforcement
28 agencies, may be sufficient to prove a gang's primary activities.

1    [Citations.]" (<u>Duran</u>, supra, at p. 1465; <u>Sengpadychith</u>, supra, 26 Cal.4th at p. 324.)

2
3        Here, the expert, Officer Patrick Mara, offered uncontradicted testimony that the primary activities of the Bloods gang included "sales of narcotics, burglaries, robberies, shootings, and murders." These crimes are specified in section 186.22, subdivisions (e) and (f) as qualifying primary activities. Officer Mara's testimony was based on sources approved by our Supreme Court. (<u>See</u> <u>Sengpadychith</u>, supra, 26 Cal.4th at p. 324; <u>see also</u> <u>People v. Gardeley</u> (1996) 14 Cal.4th 605, 620.) Thus, the evidence was sufficient to support the jury's finding on the primary activities element.

4
5
6

7        Defendant does not dispute that Officer Mara's experience and knowledge qualified him as an expert on the criminal activities of the Bloods gang. Defendant, however, asks us to discredit Officer Mara's testimony, arguing his opinion about the Bloods' primary activities lacked sufficient foundation because there was no evidence the officer had knowledge of the gang's non-criminal activities or had training in disciplines other than law enforcement "so that the number and nature of the enumerated crimes committed by its members on its behalf can be assessed in context."

8
9
10
11

12       Defendant, however, provides no authority supporting this ground for discrediting Officer Mara's testimony. As discussed above, Officer Mara's opinion regarding the primary activities of the Bloods gang was based on sources approved in previous California decisions and was sufficient to establish this element of the gang enhancements and substantive gang offense. Defendant offers no compelling reason for departing from established law in this case.

13
14
15

16   <u>Wafford</u>, 2010 Cal. App. Unpub. LEXIS 4998 at 6-9.

17                    b.    Legal Standard

18       The Fourteenth Amendment's Due Process Clause guarantees that a criminal

19   defendant may be convicted only by proof beyond a reasonable doubt of every fact

20   necessary to constitute the charged crime. <u>Jackson v. Virginia</u>, 443 U.S. 307, 315-16, 99

21   S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Under the <u>Jackson</u> standard, "the relevant

22   question is whether, after viewing the evidence in the light most favorable to the

23   prosecution, *any* rational trier of fact could have found the essential elements of the

24   crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319 (emphasis in original).

25       In applying the <u>Jackson</u> standard, the federal court must refer to the substantive

26   elements of the criminal offense as defined by state law. <u>Jackson</u>, 443 U.S. at 324 n.16.

27   A federal court sitting in habeas review is "bound to accept a state court's interpretation

28

                                          16

1    of state law, except in the highly unusual case in which the interpretation is clearly

2    untenable and amounts to a subterfuge to avoid federal review of a constitutional

3    violation." <u>Butler v. Curry</u>, 528 F.3d 624, 642 (9th Cir. 2008) (quotation omitted).

                                                                            c.    Analysis

5    Petitioner asserts that the prosecution did not establish a pattern of criminal

6    activity by the gang with regard to the crime of kidnapping. The prosecution only

7    presented evidence that Petitioner's gang's primary activities included the "sales of

8    narcotics, burglaries, robberies, shootings, and murders."

9    Petitioner conflates the legal requirements to establish a criminal street gang

10   under §186.22(f) and the requirement to show that the crime of conviction was

11   committed for the benefit of the criminal street gang under § 186.22(b)(1).

12   To establish a gang enhancement, the prosecution must prove two elements: (1)

13   that the crime was "committed for the benefit of, at the direction of, or in association with

14   any criminal street gang," and (2) that the defendant had "the specific intent to promote,

15   further, or assist in any criminal conduct by gang members ...." Cal. Penal Code §

16   186.22(b)(1).)

17   Furthermore, to establish the gang enhancement, the prosecution must prove the

18   existence of a criminal street gang, which is defined as "any ongoing organization,

19   association, or group of three or more persons, whether formal or informal" that has as

20   one of its "primary activities" the commission of one or more statutorily enumerated

21   criminal offenses and through its members engages in a "pattern of criminal gang

22   activity." <u>People v. Sengpadychith</u>, 26 Cal. 4th 316, 319-320 (2001) (citing Cal. Penal

23   Code § 186.22(f)). Sufficient proof of a gang's primary activities may consist of either: (1)

24   "evidence that the group's members consistently and repeatedly have committed

25   criminal activity listed in the gang statute"; or (2) expert testimony about the gang's

26   primary activities where the gang expert's opinions are based on conversations with

27   gang members, the expert's own experience investigating gang crime, and "information

28   from colleagues in [the expert's] own police department and other law enforcement

1

2   agencies." Id. at 324.

3         The plain language of Cal. Penal Code § 186.22(b)(1) does not require the crime

4   of conviction to be one of the crimes that is found to be a primary activity of the gang.

5   The crime of conviction need only be any "felony committed for the benefit of, at the

6   direction of, or in association with any criminal street gang, with the specific intent to

7   promote, further, or assist in any criminal conduct by gang members" Id. Petitioner has

8   provided no legal authority for his argument.   Under the plain interpretation of the

9   relevant state statute, the claim fails.

10         In addition, Petitioner has not shown that the state court's determination that there

11   was sufficient evidence to support the conviction was unreasonable. The state court

12   found that the prosecution's expert, Officer Patrick Mara, offered uncontradicted

13   testimony that the primary activities of the gang included enumerated felonies under

14   section 186.22(e).

15         The evidence at trial established that Petitioner forced the victim to get in his car.

16   (Rep. Tr. 518-519, 520-521, 527.) Petitioner drove the victim to a car wash where four

17   other Blood gang members were waiting. (Id. at 521-522, 532.) Petitioner told the four

18   other members to follow him to an alley. (Id. at 522, 526-527.) Once in the alley,

19   Petitioner instructed another member to fight the victim. (Id. at 522, 526-527.) Petitioner

20   also struck the victim, knocking him to the ground, and causing him to loose

21   consciousness. (Id. at 522-525.) Subsequently, victim left with his child's mother. (Id.

22   527, 529, 705-707.) Petitioner again found the victim and demanded he get in

23   Petitioner's car. (Id. 534-535, 537, 709.) Petitioner then took the victim to another gang

24   member's house, where they demanded the victim get money to pay them for the gun he

25   lost. (Id. 537-539.)

26         This evidence is sufficient to prove that Petitioner kidnapped the victim for the

27   benefit of his gang. The crime was committed by Petitioner with the assistance of other

28

1  Bakersfield Bloods gang members. The fact that Petitioner committed the kidnapping in

2  concert with other gang members supports the inference that Petitioner committed the

3  offense to benefit and further his gang. People v. Villalobos, 145 Cal. App. 4th 310, 322

4  (Cal. App. 2006). It appears that Petitioner was attempting to punish the victim for losing

5  a gun, and thereby enforce order among the members of the gang. Petitioner committed

6  the crime of conviction, kidnapping for the benefit of the gang, and the prosecution's

7  gang expert testified that the gang engaged in primary activities including criminal acts

8  enumerated by California Penal Code section 186.22. Accordingly, sufficient evidence

9  supports Petitioner's gang enhancement.

10      Under Jackson and AEDPA, the state decision is entitled to double deference on

11  habeas review. Based on review of the trial record, there was sufficient evidence based

12  on the testimony of the victim and the gang expert to deny Petitioner's challenge to

13  whether the crime was committed in furtherance of the criminal street gang. There was

14  no constitutional error, and Petitioner is not entitled to relief with regard to this claim.

15              2.      Bodily Injury Requirement for Kidnapping

16      Petitioner contends that there was insufficient evidence to show that bodily injury

17  occurred during the kidnapping, because Petitioner was assaulted before the kidnapping

18  occurred.

19                      a.      State Court Decision

20      Petitioner presented this claim by way of direct appeal to the California Court of

21  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

22  appellate court and summarily denied in a subsequent petition for review by the

23  California Supreme Court. Applying the look through doctrine, (Ylst v. Nunnemaker, 501

24  U.S. at 804-05 & n.3), the California Court of Appeal explained:

25      III. Sufficiency of the Evidence to Support the Jury's Finding of Bodily
        Harm

26

27          Another reason his sentence for kidnapping should be reduced to
        life with the possibility of parole, defendant asserts, is that there was
        insufficient evidence to support the jury's finding the victim suffered bodily
28      harm  during  the  commission  of  the  kidnapping  for  ransom.**[FN4]**

1
2

Defendant does not dispute that Maiden suffered bodily harm when he was beaten behind the carwash. Rather, defendant claims the kidnapping did not begin until after the beating occurred, when he ordered Maiden to get into his car at Maiden's aunt's house.

3
4
5
6
7
8
9
10

FN4: The trial court correctly instructed the jury on the elements of the crime of kidnapping for ransom in violation of section 209, subdivision (a), pursuant to CALCRIM No. 1202, as follows: "To prove that the defendant is guilty of this crime, the People must prove that: [P] 1. The defendant (kidnapped[,]/or confined) someone; [P] [2. The defendant held or detained that person;] [P] AND [P] 3. The defendant did so (for ransom[,]/[or] to get money or something valuable.) [P] [It is not necessary that the person be moved for any distance.] [P] … [P] [If you find the defendant guilty of kidnapping for (ransom[,]), you must then decide whether the People have proved the additional allegation that the defendant (caused the kidnapped person to suffer bodily harm)." The jury was also instructed with CALCRIM No. 1215 that "[t]he defendant is not guilty of kidnapping if the other person consented to go with the defendant."

11
12
13
14
15
16
17
18

We disagree with defendant's claim and conclude there was sufficient evidence of a kidnapping the first time defendant told Maiden to get in his car. The fact that the defendant was not a stranger to Maiden and that they were both members of the same gang did not necessarily render Maiden's initial decision to get into defendant's car a consensual one, as defendant asserts on appeal. In considering defendant's claim of insufficiency of the evidence, we must view the evidence in the light most favorable to the prosecution, and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (People v. Ochoa (1993) 6 Cal.4th 1199, 1206.) Viewing the evidence under this standard, a rational trier of fact could infer from the circumstances that Maiden did not freely consent to getting into defendant's car the first time but did so out of fear based on defendant's high status as a shot-caller in the gang and knowledge that he could be disciplined for not obeying defendant's commands.

19
20
21
22
23

Our conclusion is not altered by statements the prosecutor made during closing argument, which defendant characterizes as "an express concession that the kidnapping did not commence until after [defendant] went to [Maiden's] aunt's house." As the People correctly observe, the jury was bound by the evidence, not by the theories advanced in the arguments of counsel. Because the evidence was sufficient to show defendant inflicted bodily injury on the victim during the course of a kidnapping, we must uphold his conviction and sentence of life without the possibility of parole.

People v. Wafford, 2010 Cal. App. Unpub. LEXIS 4998 at 14-16.

24

b.    Analysis

25
26

Respondent contends that there was sufficient evidence that kidnapping occurred

27

when the victim was originally told to get in the car and driven to the carwash, and

28

20

1  therefore the injuries occurred during the commission of the kidnapping.

2      Viewing the evidence in the light most favorable to the prosecution, there is

3  sufficient evidence to show that the kidnapping occurred prior to the assault at the

4  carwash. The victim testified that he knew Petitioner came to his house because of the

5  lost gun and that he was reluctant to get in the car but did so because if he did not follow

6  the instructions of Petitioner he might have to fight someone, get shot, or otherwise get

7  disciplined. (Rep. Tr. at 521.) Accordingly, evidence was provided that the victim did not

8  get in the car under his own consent, but rather under the threat of violence and was

9  therefore kidnapped prior to the assault. Under Jackson and AEDPA, the state decision

10  is entitled to double deference on habeas review. Based on the Court's independent

11  review of the trial record, it is apparent that Petitioner's challenge to his conviction for

12  kidnapping with bodily injury is without merit. There was no constitutional error, and

13  Petitioner is not entitled to relief with regard to this claim.[2]

14      **B.    Claim Two: Improper Vouching**

15      Petitioner, in his second claim for relief asserts that the prosecutor improperly

16  vouched for the credibility of the victim when during the closing statement he stated that

17  he could not think of any reason why the victim would fabricate the testimony provided.

18          1.    State Court Decision

19      Petitioner presented this claims by way of direct appeal to the California Court of

20  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

21  appellate court and summarily denied in a subsequent petition for review by the

22  California Supreme Court. Because the California Supreme Court's opinion is summary

23  in nature, this Court "looks through" that decision and presumes it adopted the reasoning

24  of the California Court of Appeal, the last state court to have issued a reasoned opinion.

---

[2] Petitioner, in his amended petition, includes a footnote stating that he wishes to incorporate a due process claim for lack of notice by the prosecution to allege the bodily harm allegation. The claim was not presented in the original federal habeas petition, and therefore is untimely based on similar calculations presented above. Further, Petitioner has presented no argument regarding how the claim relates back to the claims filed in the original petition. As the claim barred by the statute of limitations, the Court will not review the merits of the claim.

1    See Ylst v. Nunnemaker, 501 U.S. at 804-05 & n.3.

2          In denying Petitioner's claim, the California Court of Appeal explained:

3    IV. Prosecutorial Misconduct

4          Defendant contends the prosecutor committed prejudicial
     misconduct by vouching for the credibility of prosecution witnesses.

5

6          "The applicable federal and state standards regarding prosecutorial
     misconduct are well established. '"A prosecutor's … intemperate behavior
7    violates the federal Constitution when it comprises a pattern of conduct 'so
     egregious that it infects the trial with such unfairness as to make the
8    conviction a denial of due process.'"' [Citations.] Conduct by a prosecutor
     that does not render a criminal trial fundamentally unfair is prosecutorial
9    misconduct under state law only if it involves '"'the use of deceptive or
     reprehensible methods to attempt to persuade either the court or the
10   jury.'"' [Citation.] As a general rule a defendant may not complain on
     appeal of prosecutorial misconduct unless in a timely fashion--and on the
11   same ground--the defendant made an assignment of misconduct and
     requested that the jury be admonished to disregard the impropriety.
12   [Citation.] Additionally, when the claim focuses upon comments made by
     the prosecutor before the jury, the question is whether there is a
13   reasonable likelihood that the jury construed or applied any of the
     complained-of remarks in an objectionable fashion. [Citation.]" (People v.
14   Samayoa (1997) 15 Cal.4th 795, 841.)

15         "A prosecutor is prohibited from vouching for the credibility of
     witnesses or otherwise bolstering the veracity of their testimony by
16   referring to evidence outside the record. [Citations.] Nor is a prosecutor
     permitted to place the prestige of her office behind a witness by offering
17   the impression that she has taken steps to assure a witness's truthfulness
     at trial. [Citation.] However, so long as a prosecutor's assurances
18   regarding the apparent honesty or reliability of prosecution witnesses are
     based on the 'facts of [the] record and the inferences reasonably drawn
19   therefrom, rather than any purported personal knowledge or belief,' her
     comments cannot be characterized as improper vouching. [Citations.]"
20   (People v. Frye (1998) 18 Cal.4th 894, 971, disapproved on another
     ground in People v. Doolin (2009) 45 Cal.4th 390, 421, fn. 22.)

21         Defendant claims the prosecutor improperly vouched for
     prosecution witnesses in closing arguing by saying: "And I can't think of
22   any reason for them to make this up. Nor can I think of any reason for
     Sidney Maiden to make this up." After the prosecutor made this statement,
23   defense counsel objected on grounds of improper vouching, and the court
     sustained the objection. In response, the prosecutor stated: "I'm allowed to
24   say that I believe. Well, that I can't think of any reason for him to make this
     up based upon the same evidence that you have seen. Nothing special
25   that I know that you haven't heard." Defense counsel objected again and,
     this time, the court overruled the objection.

26

27         Although the use of the phrase, "I can't think of any reason" was
     improper, the prosecutor quickly clarified that his argument about witness
28   veracity was based on the evidence the jury heard, not evidence outside
     the record. The prosecutor went on to provide a detailed description of

factual circumstances Maiden testified to, which supported his argument that Maiden had no reason to lie or make up his testimony against defendant. The prosecutor noted, for example, that Maiden, who was in custody at the time of trial, was offered no promises in exchange for testifying against defendant. Maiden's testimony also revealed that by cooperating with the police and prosecutor, he had acquired the reviled status of a "snitch" and encountered problems in jail and was no longer able to live in his hometown or stay with his grandparents. On this record, we conclude it is unlikely the jury would have thought the prosecutor was personally vouching for the credibility of witnesses. Rather, the complained-of remarks were part of an argument asking the jury to consider evidence showing the witnesses had no reason to lie. There was no misconduct as the prosecutor was asking jurors to believe witnesses based on the evidence.

We reach the same conclusion with respect to comments the prosecutor made in his rebuttal argument. While asking the jury to draw certain conclusions based on the evidence, he made a few statements like "*I think* it is pretty obvious to Mr. Wafford that Mr. Maiden is not getting in the car voluntarily", "*I think* it is pretty clear at that point Sidney Maiden really doesn't want to see Mr. Wafford," and "*I don't see* how he would have a problem seeing the gun as he is getting into the car[.]" (Italics added.) In sustaining defense counsel's objections on the grounds of improper vouching, the trial court remarked, "we've just got to get the I pronoun out of this." The court advised the prosecutor: "You are saying, I don't see like expressing a belief. Just--you can say it is apparent or something like that." The prosecutor then argued: "It is apparent when you see the photo and the drawing that the gun could be seen as someone is getting in the car. I think--well there I go again. [P] It is also apparent, ladies and gentlemen, with regards to credibility, this did, in fact, happen. And the reason we know that is because you don't just have Sidney Maiden's word, we have a number of people who spoke to Sidney Maiden as this happened."

As can be seen, the prosecutor's overall argument stressed the evidence supporting his assessment of witness credibility. Despite the prosecutor's criticized use of the personal pronoun, it is not reasonably probable the jury would have understood his comments during argument to constitute a personal endorsement of prosecution witnesses. Defendant has not established that the prosecutor's conduct resulted in an unfair trial, denied him due process of law, or involved deceptive or reprehensible methods to persuade the jury. Accordingly, we reject his prosecutorial misconduct claim.

People v. Wafford, 2010 Cal. App. Unpub. LEXIS 4998 at 16-21.

2.      Analysis

It is improper for the prosecution to vouch for the credibility of a government witness. United States v. Young, 470 U.S. 1, 18, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985). "Improper vouching typically occurs in two situations: (1) the prosecutor places the prestige of the government behind a witness by expressing his or her personal belief in

1   the veracity of the witness, or (2) the prosecutor indicates that information not presented

2   to the jury supports the witness's testimony." United States v. Brooks, 508 F.3d 1205,

3   1209 (9th Cir. 2007) (quoting United States v. Hermanek, 289 F.3d 1076, 1098 (9th Cir.

4   2002))

5          Relief for claims of prosecutorial misconduct is limited to cases in which the

6   petitioner can establish that prosecutorial misconduct resulted in actual prejudice.

7   Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995) (citing Brecht, 507 U.S. at 637-38);

8   see also Darden v. Wainwright, 477 U.S. 168, 181-83 (1986); King v. Schriro, 537 F.3d

9   1062, 1069 (9th Cir. 2008). Put another way, prosecutorial misconduct violates due

10  process when it has a substantial and injurious effect or influence in determining the

11  jury's verdict. See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996). "The

12  relevant question is whether the prosecutors' comments 'so infected the trial with

13  unfairness as to make the resulting conviction a denial of due process." Darden, 477

14  U.S. at 181. However, in evaluating a claim of prosecutorial misconduct, "a court should

15  not lightly infer that a prosecutor intends an ambiguous remark to have its most

16  damaging meaning or that a jury, sitting through lengthy exhortation, will draw that

17  meaning from the plethora of less damaging interpretations." King v. Schriro, 537 F.3d

18  1062, 1070 -1071 (9th Cir. 2008) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 647

19  (1974)).

20         The state court found, having reviewed the relevant record, that the prosecution's

21  arguments were not an attempt to personally endorse the statements of the victim.

22  Instead, they were an attempt to argue that the evidence presented no reasonable

23  explanation as to why the victim would lie about the actions of the Defendant. The Court

24  noted that the victim was not provided any favorable sentencing with regard to his own

25  criminal convictions, and based on his testimony would be considered a "snitch" and

26  subject to potential retaliatory actions by other gang members. This Court agrees with

27  the conclusions of the state court. Petitioner has not shown that the prosecution placed

28

1   the credibility of the State of California or his office behind the victim or indicated that

2   information not presented to the jury supported the victim's testimony. While the

3   prosecutor indicated that he personally thought that the victim was telling the truth,

4   Petitioner has not shown that the prosecutor knew that the victim's testimony was

5   truthful, or otherwise provided personal assurances of the victim's veracity.

6         In general, arguments that the witness had no motive to lie have not been

7   considered improper vouching. See United States v. Weatherspoon, 410 F.3d 1142,

8   1166 (9th Cir. 2005) (argument that witnesses had nothing to gain by lying did not

9   constitute improper vouching); United States v. Nash, 115 F.3d 1431, 1439 (9th Cir.

10   1997) (prosecutor's argument that witnesses had no motive to lie "were simply

11   inferences from evidence in the record" and did not constitute improper vouching); see

12   generally, United States v. Wright, 625 F.3d 583, 611 n.15 (9th Cir. 2010) ("In the usual

13   case of vouching, the prosecutor does not merely give his impressions of the

14   defendant's case, or highlight his own experience; rather, he explicitly assures the

15   government witnesses' veracity, [citations].").

16         In any event, assuming that some of the challenged comments did constitute

17   vouching, Petitioner has not shown that the comments "'so infected the trial with

18   unfairness'" as to violate due process. Darden, 477 U.S. at 181. The court instructed the

19   jury that the statements of the attorneys were not evidence. (Rep. Tr. at 1068-1070,

20   Clerk's Tr. at 455.) The jury is presumed to have followed the court's instructions. See

21   Weeks v. Angelone, 528 U.S. 225, 226 (2000); United States v. Necoechea, 986 F.2d

22   1273, 1280-81 (9th Cir. 1993) (instruction that attorney's statements were not evidence

23   ameliorated effect of alleged vouching). The curative instructions reduced any possible

24   unfairness which otherwise might have resulted from the alleged vouching. See Hein v.

25   Sullivan, 601 F.3d 897, 916 (9th Cir. 2010) In sum, the California courts' rejection of this

26   claim was not unreasonable. See 28 U.S.C. § 2254(d). Petitioner is not entitled to relief.

27   **V.     RECOMMENDATION**

28         It is recommended that the Motion to Amend (ECF No. 51) be DENIED. It is

further recommended that the petition for a writ of habeas corpus be DENIED with prejudice.

This Findings and Recommendation is submitted to the assigned District Judge, under 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).


IT IS SO ORDERED.

Dated:   March 3, 2015            /s/ Michael J. Seng
                                 UNITED STATES MAGISTRATE JUDGE